# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICARDO GONZALEZ, SEVERIN JOHNSON, and MICHAEL SCOTT MARSHALL,<br><br>    Plaintiffs,<br><br>    v.<br><br>WILLIAM WALTMAN,<br><br>    Defendant. | NO. 3:16-CV-1375<br><br>(JUDGE CAPUTO) |

## **MEMORANDUM**

Presently before me is the Motion for Partial Summary Judgment (Doc. 13) filed by Plaintiffs Ricardo Gonzalez ("Gonzalez"), Severin Johnson ("Johnson"), and Michael Scott Marshall ("Marshall") (collectively, where appropriate, "Plaintiffs"). On October 16, 2015, while Plaintiffs were filming outside the Pennsylvania State Police Barracks in Lehighton, Pennsylvania, they were approached by multiple state troopers. After Plaintiffs refused to respond to questions by the troopers, they were arrested by William Waltman ("Waltman"), a Corporal with the Pennsylvania State Police, and troopers under his direction. Plaintiffs were charged with defiant trespass in violation of 18 Pa. C.S.A. § 3503(b)(1)(ii) for walking beyond a sign located outside the barracks stating "Emergency and Authorized Vehicles Only." The charges proceeded to a summary trial in magisterial district court. At the close of the Commonwealth's case-in-chief, the presiding magisterial district judge granted Plaintiffs' motion for judgment of acquittal. Plaintiffs subsequently commenced this action against Waltman asserting claims for false arrest and malicious prosecution. Now, Plaintiffs seek partial summary judgment on those claims. Plaintiffs' motion for partial summary judgment will be denied because a reasonable jury could conclude that probable cause existed for the crime charged.

## I. Background

Plaintiffs Gonzalez and Johnson worked for an organization called "CopBlock." (*See* Pls.' SMF, ¶ 1; Def.'s SMF, ¶ 1). Marshall also did some work for CopBlock. (*See id*.). CopBlock is a national organization that investigates, videos, and writes about police misconduct. (*See id*.). Plaintiffs were investigative reporters for CopBlock. (*See id*.). Waltman is a Corporal with the Pennsylvania State Police and he was the patrol unit supervisor at the Lehighton Barracks in October 2015. (*See* Waltman Dep., 5:23-7:5).

After Plaintiffs learned that police in Lehighton were seizing cameras and/or demanding individuals shut off their cameras when filming police, Plaintiffs decided to investigate. (*See* Pls.' SMF, ¶ 5; Def.'s SMF, ¶ 6). On October 16, 2015, Plaintiffs first went to the Lehighton Police Department before proceeding to the Pennsylvania State Police Barracks in Lehighton to get background video for a story. (*See* Pls.' SMF, ¶¶ 6-7; Def.'s SMF, ¶¶ 6-7). Upon their arrival, Plaintiffs noticed a police vehicle parked across a handicapped parking space. (*See* Pls.' SMF, ¶ 8; Def.'s SMF, ¶ 8). After informing Waltman that three people were filming the barracks, Corporal Borosh and two other troopers began to observe Plaintiffs on surveillance cameras. (*See* Pls.' SMF, ¶¶ 9-10; Def.'s SMF, ¶¶ 9-10). Waltman inquired as to whether Plaintiffs were "beyond the signs", but they were not at that point. (*See* Pls.'s SMF, ¶ 13; Def.'s SMF, ¶ 13). Waltman was later informed that two Plaintiffs had walked past the sign. (*See* Pls.' SMF, ¶ 14; Def.'s SMF, ¶ 14).

A sign on one part of the parking lot at the barracks states "Emergency and Authorized Vehicles Only." (Pls.' SMF, ¶ 11; Def.'s SMF, ¶ 11). The sign does not refer to pedestrians or people outside of vehicles. (*See* Pls.' SMF, ¶ 12; Def.'s SMF, ¶ 12).

Waltman personally took Johnson into custody and directed other troopers to arrest Marshall and Gonzalez after learning that at least two of them walked past the sign. (*See* Pls.' SMF, ¶ 15; Def.'s SMF, ¶ 15). Before arresting Johnson, Waltman

2

asked him if he was beyond the sign, to which Johnson replied "I don't feel the need to answer any question." (Pls.' SMF, ¶ 16; Def. SMF, ¶ 16). Waltman arrested Johnson and had the others taken into custody because they were in a restricted area, they were behind the building and were not emergency personnel, they did not respond to questions about what they were doing outside of the barracks, they were filming the barracks, and for security purposes, including his observations in light of the Eric Frein incident. (*See* Waltman Dep., 11:11-12:24 45:5-25, 46:5-25). Plaintiffs were all handcuffed and Marshall was shackled to a bench. (*See* Pls.' SMF, ¶ 19; Def.'s SMF, ¶ 19). Plaintiffs were seized "for the purpose of and to begin prosecuting them." (Pls.' SMF, ¶ 20; Def.'s SMF, ¶ 20).

Plaintiffs were all charged with defiant trespass in violation of 18 Pa. C.S.A. § 3503(b)(1)(ii), which states that "(1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by: . . . (ii) posting in a manner prescribed by law or reasonably likely to come to the attention of intruders." (Pls.' SMF, ¶¶ 21, 23; Def.'s SMF, ¶¶ 21, 23). Prior to issuing the charges, the on-call assistant district attorney was contacted, and he advised after review that nothing greater than summary criminal charges were warranted at the time. (*See* Pls.' Ex. "5").[1]

Plaintiffs were released on the evening of October 16, 2015, but Plaintiffs' cell phones and cameras were kept by the Pennsylvania State Police. (*See* Pls.' SMF, ¶ 26; Def.'s SMF, ¶ 26; *see also* Pls.' Ex. "5" (request for return of property was denied)). Waltman refused to return the property or provide a receipt for same, and he

---

[1] In his deposition, Waltman testified that although he contacted the assistant district attorney and informed him that the sign referenced personnel, he also stated that he told "verbatim the signs" to the assistant district attorney. (Waltman Dep., 40:17-18, 70:14-18). The incident report prepared by Waltman, however, suggests that it was Borosh that spoke with the assistant district attorney. (*See* Pls.' Ex. "5" ("on-call Carbon County District Attorney was notified via telephone of the Incident by Cpl. Michael Borosh.")).

3

threatened to re-arrest Plaintiffs if they did not leave immediately. (*See* Pls.' SMF, ¶ 28; Def.'s SMF, ¶ 28).

On March 1, 2016, a summary trial was held on the trespass charges filed against Plaintiffs resulting from the events outside the barracks on October 16, 2015. (*See* Pls. Exs. "25"-"27").[2] At the summary trial, Waltman asked questions of witnesses, presented evidence, and made arguments on behalf of the Commonwealth. (*See* Waltman Dep., 54:16-55:24). There was no assistant district attorney at Plaintiffs' summary trial. (*See id*.). The magisterial district judge granted Plaintiffs' motion for judgment of acquittal at the conclusion of the Commonwealth's case-in-chief without hearing any evidence or testimony from Plaintiffs. (*See* Compl., ¶ 30; Answer, ¶ 30). According to Waltman, the magisterial district judge granted Plaintiffs' motion to dismiss the charges, citing "that the Commonwealth failed to meet the criteria for the charge of 'Defiant Trespass', in that the signs posted at the time at PSP Lehighton were un-clear to the reader." (Pls.' Ex. "15").

Based on the foregoing, Plaintiffs commenced this action on July 1, 2016. (*See* Doc. 1, *generally*). In Count One of the Complaint, Plaintiffs allege that Waltman falsely arrested them without probable cause in violation of the Fourth Amendment and based on their exercise of their First and Fifth Amendment rights. (*See id*.). Count Two of the Complaint asserts a Fourth Amendment malicious prosecution claim. (*See id*.). Waltman answered the complaint, (*see* Doc. 8, *generally*), and the matter proceeded to discovery. With discovery now completed, Plaintiffs have moved for partial summary judgment on their false arrest (Count One) and malicious prosecution (Count Two) claims. (*See* Doc. 13, *generally*). Plaintiffs' motion is fully

---

[2] Waltman characterizes the March 1, 2016 proceeding as a preliminary hearing. (*See* Def.'s SMF, ¶ 30). The notices provided to Plaintiffs in advance of that proceeding, though, are entitled "Summary Trial Notice" and indicate that a "Summary Trial" was scheduled for March 1, 2016. (*See* Pls.' Exs. "25"-"27"). This is consistent with Waltman's Answer to the Complaint which admitted that the March 1, 2016 proceeding was a trial. (*See* Answer, ¶ 30).

4

briefed and ripe for disposition.

## II. Legal Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A court may grant a motion for summary judgment if, after it considers all probative materials of record, with inferences drawn in favor of the non-moving party, the court is satisfied that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Chavarriaga v. N.J. Dep't of Corrs.*, 806 F.3d 210, 218 (3d Cir. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S. Ct. 2548, 2556, 91 L. Ed. 2d 265 (1986); *Brooks v. Kyler*, 204 F.3d 102, 105 n.5 (3d Cir. 2000)). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law. A dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986)). "In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter . . . ." *American Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 587, 581 (3d Cir. 2009) (citing *Anderson*, 477 U.S. at 248-49, 106 S. Ct. 2505).

The moving party bears the initial burden to identify "specific portions of the record that establish the absence of a genuine issue of material fact." *Santini*, 795 F.3d at 416 (citing *Celotex*, 477 U.S. at 323, 106 S. Ct. 2548, 2553). If this burden is satisfied by the movant, the burden then "shifts to the nonmoving party to go beyond the pleadings and 'come forward with specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)). The nonmovant's burden is not satisfied by "simply show[ing] that there is some metaphysical doubt as to the material facts." *Chavarriaga*, 806 F.3d at 218.

### III. Discussion

Plaintiffs, as stated, seek summary judgment on their false arrest and malicious prosecution claims. (*See* Doc. 13, *generally*). Plaintiffs' claims are brought pursuant to 42 U.S.C. § 1983. *See* 42 U.S.C. § 1983. A false arrest claim under the Fourth Amendment requires a plaintiff to establish: "(1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012) (citing *Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995); *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988)). To prove a Fourth Amendment malicious prosecution claim under § 1983, a plaintiff must show: "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)). The probable cause analysis is the same for § 1983 claims for false arrest and malicious prosecution. *See, e.g.*, *Wright v. City of Phila.*, 409 F.3d 595, 604 (3d Cir. 2005); *Meketa v. Kamoie*, 955 F. Supp. 2d 345, 364-65 (M.D. Pa. 2013).[3]

Plaintiffs argue that they meet the probable cause element of their false arrest and malicious prosecution claims for two reasons. First, Plaintiffs contend that collateral estoppel prevents Waltman from challenging that he lacked probable cause to arrest them because the magisterial district judge granted Plaintiffs' motion for judgment of acquittal at the close of the case against them at the summary trial. (*See* Doc. 14, 8-9). Second, Plaintiffs insist that the facts demonstrate that Walman lacked probable cause to charge them with a crime when the sign at issue referred only to

---

[3] Because Plaintiffs are unable to establish the probable cause element of their false arrest and malicious prosecution claims on the instant motion, I do not address the remaining elements of these claims.

6

vehicles and did not provide Plaintiffs with notice that walking past the sign was prohibited. (*See id*. at 9-10).

In Pennsylvania, collateral estoppel, or issue preclusion, "'forecloses re-litigation in a later action of an issue of fact or law which was actually litigated and which was necessary to the original judgment.'" *Id*. (alteration omitted) (quoting *Hebden v. Workmen's Compensation Appeal Bd.* (*Bethenergy Mines, Inc.*), 534 Pa. 327, 632 A.2d 1302, 1304 (1993)). For collateral estoppel to apply, the party asserting it must show:

> (1) the issue decided in the prior adjudication was identical with the one presented in the later action, (2) there was a final judgment on the merits, (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication, and (4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action.

*Id*. (quoting *Safeguard Mut. Ins. Co. v. Williams*, 463 Pa. 567, 345 A.2d 664, 668 (Pa. Pa. 1975) (citations omitted); *Shaffer v. Smith*, 543 Pa. 526, 673 A.2d 872, 874 (Pa. 1996)).[4]

Waltman disputes the applicability of collateral estoppel here, claiming: (1) he was not in privity with the Commonwealth, *i.e.*, the party from the prior criminal proceeding; and (2) the ultimate outcome of the criminal charges at trial does not negate the existence of probable cause to arrest Plaintiffs. (*See* Doc. 22, 9-11).

The grant of Plaintiffs' motion for judgment of acquittal at their summary trial does not bar Waltman from asserting that he had probable cause to arrest and

---

[4] "Some Pennsylvania courts state that there are actually five - instead of four - elements to the issue preclusion doctrine. The fifth element requires that the determination of an issue in the prior case must have been 'essential' to the previous judgment." *Witkowski v. Welch*, 173 F.3d 192, 203 n.15 (3d Cir. 1999) (citing *Mellon Bank v. Rafsky*, 535 A.2d 1090, 1093 (Pa. Super. 1987)). As explained by the Third Circuit, "[w]hether there are four or five formal elements to the doctrine is not of consequence . . . [because] the doctrine is essentially the same under either analysis." *Id*.

7

prosecute Plaintiffs because the issue decided in the prior action is not identical to that presented here. "[A]n acquittal is not alone sufficient to establish want of probable cause." *Rosario v. Lynch*, No. 13-195, 2017 WL 4098709, at *5 (E.D. Pa. Sept. 15, 2017) (citing *Miller v. Pa. R. Co.*, 89 A.2d 809, 812 (Pa. 1952)); *Laphan v. Haines*, 695 F. App'x 662, 665 (3d Cir. 2017) (acquittal "not relevant to the probable cause determination because the standard for probable cause is significantly lower than the standard for a conviction."); *Halsey v. Pfeiffer*, 750 F.3d 279, 299 (3d Cir. 2014) (same); *O'Rourke v. Krapf*, No. 01-3065, 2002 WL 32348933, at *9 (E.D. Pa. Sept. 20, 2002) ("Neither an acquittal of the defendant in a criminal prosecution, nor the ignoring of the bill against him by the grand jury, nor his discharge by the examining magistrate, constitute proof of want of probable cause, or shifts the burden of proof to the defendant in the civil action."). Given that, Plaintiffs' acquittal before the magisterial district judge did not resolve the same issue to the one presented in the matter *sub judice*. *See, e.g.*, *Peschel v. City of Missoula*, 686 F. Supp. 2d 1107, 1121 (D. Mont. 2009) ("issues resolved by the [the plaintiff's] acquittal is not identical to the issue of probable cause for his arrest."); *see also Barksdale v. Lake Cnty.*, No. 12-100, 2015 WL 438635, at *11 n.4 (N.D. Ind. Feb. 3, 2015) (finding argument frivolous that *res judicata* established that the plaintiff was arrested without probable cause on the basis that the criminal charges against him were dismissed); *Lewis v. Bradenton Beach Police Dep't*, No. 11-18, 2011 WL 1227825, at *1 (M.D. Fla. Apr. 1, 2011) ("it is axiomatic that the ultimate disposition of the charges against Plaintiffs is not germane to the probable cause analysis in a separate civil action against the officer under section 1983."); *Lilly v. Gryczewski*, No. 95-6261, 1996 WL 501573, at *4 (N.D. Ill. Aug. 30, 1996) (collateral estoppel not applicable because the state court's acquittal of the plaintiff did not adjudicate probable cause). Plaintiffs, therefore, are unable to satisfy thir burden of proving the applicability of collateral estoppel to the case at hand.

Second, Plaintiffs are not entitled to summary judgment because the issue of

probable cause is best left to the determination of the jury in this case.

> The Fourth Amendment prohibits police from making an arrest except "upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. Far from demanding proof of guilt beyond a reasonable doubt, "[p]robable cause exists if there is a 'fair probability' that the person committed the crime at issue." *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000) (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997)). Put another way, "probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995). The probable cause standard thus provides individuals protection "against unreasonable searches and seizures," U.S. Const. amend. IV, while simultaneously enabling investigating officers to act quickly - before necessarily obtaining evidence sufficient to prove guilt beyond a reasonable doubt - to effect an arrest. "[T]he standard does not require that officers correctly resolve conflicting evidence or that their determinations of credibility, were, in retrospect, accurate." *Wright v. City of Phila.*, 409 F.3d 595, 603 (3d Cir. 2005).
>
> As the Supreme Court has observed, "[i]n dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Illinois v. Gates*, 462 U.S. 213, 231, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983) (quoting *Brinegar v. United States*, 338 U.S. 160, 175, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949) (alteration in original)). For this reason, the Court has eschewed "any rigid demand that specific 'tests' be satisfied" and has instead prescribed a "totality-of-the-circumstances approach" to the probable cause determination. *Id.* at 230-31, 103 S. Ct. 2317. That determination is necessarily fact-intensive, and it will usually be appropriate for a jury to determine whether probable cause existed. *See Sherwood*, 113 F.3d at 401 ("Typically, the existence of probable cause in a section 1983 action is a question of fact." (citing *Groman v. Twp. of Manalapan*, 47 F.3d 628, 635 (3d Cir. 1995))). Nevertheless, summary judgment may be granted on the question of probable cause if a court concludes that "the evidence, viewed most favorably to [the nonmoving party], reasonably would not support a contrary factual finding." *Id.*

*Dempsey v. Bucknell Univ.*, 834 F.3d 457, 467-68 (3d Cir. 2016).

"Probable cause exists where the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to

believe that an offense has been or is being committed by the person to be arrested." *United States v. Cruz*, 910 F.2d 1072, 1076 (3d Cir.1990). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152, 125 S. Ct. 588, 593, 160 L. Ed. 2d 537 (2004). In coming to this conclusion, the arresting officer's state of mind is irrelevant. *Whren v. United States*, 517 U.S. 806, 812–13, 116 S. Ct. 1769, 1774, 135 L. Ed. 2d 89 (1996) ("[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis"); *Johnson v. Campbell*, 332 F.3d 199, 215 (3d Cir. 2003) ("Probable cause is objective, not subjective; essential to probable cause is that an officer would be justified in believing that an actual offense was being committed."); *see also Estate of Smith*, 318 F.3d at 514 ("Improper motive, however, is irrelevant to the question whether the objective facts available to the officers at the time reasonably could have led the officers to conclude that Smith was committing an offense.").

Here, Plaintiffs argue that the record demonstrates an absence of probable cause to charge them with violations of 18 Pa. C.S.A. § 3503(b)(1)(ii). (*See* Doc. 14, 9-10). More particularly, Plaintiffs contend that Waltman's stated rationale for charging them was that they walked past a sign which stated "Emergency and Authorized Vehicles Only." (*See id*.). However, Plaintiffs emphasize that "[a] sign prohibiting certain vehicles does not give notice that walking past the sign is prohibited. There was simply no probable cause to claim that the plaintiffs violated section 3503(b)(1)(ii)." (*Id*.).

Viewed in the light most favorable to Waltman as the nonmoving party, the question of probable cause is properly left for resolution by the jury. Although Plaintiffs insist that the sign at issue only restricted the type of vehicle in the parking lot and not pedestrians and therefore no probable cause existed for their arrest for walking beyond the sign, I am not convinced that "the evidence, viewed most favorably to [Waltman], reasonably would not support a contrary factual finding."

*Dempsey*, 834 F.3d at 468. Based on the totality of the circumstances, namely, the content of the sign and its questionable applicability to pedestrians, the events leading up to the arrest of Plaintiffs on the evening of October 16, 2015, and concerns for trooper safety, a reasonable jury could find the existence of probable cause. As such, summary judgment in favor of Plaintiffs is not warranted on their false arrest and malicious prosecution claims.

## IV. Conclusion

For the above stated reasons, Plaintiffs' motion for partial summary judgment will be denied.

An appropriate order follows.

March 16, 2018  /s/ A. Richard Caputo
Date  A. Richard Caputo
  United States District Judge