# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICARDO GONZALEZ, SEVERIN JOHNSON, and MICHAEL SCOTT MARSHALL,

    Plaintiffs,

v.

WILLIAM WALTMAN,

    Defendant.

NO. 3:16-CV-1375

(JUDGE CAPUTO)

## MEMORANDUM

Presently before me is the Motion for Judgment as a Matter of Law and/or New Trial (Doc. 73) filed by Plaintiffs Ricardo Gonzalez ("Gonzalez"), Severin Johnson ("Johnson"), and Michael Scott Marshall ("Marshall") (collectively, where appropriate, "Plaintiffs"). Plaintiffs proceeded to trial in this action against William Waltman ("Waltman"), a Corporal with the Pennsylvania State Police, on claims under the Fourth Amendment for false arrest and malicious prosecution, as well as under the First Amendment for retaliation.[1] The jury returned a verdict in favor of Waltman on all claims, finding, *inter alia*, that Waltman had probable cause to arrest or seize all Plaintiffs. Plaintiffs contend that the question of probable cause should have been resolved by me, not the jury, and, even viewing the evidence in the light most favorable to Waltman, Plaintiffs argue that they are entitled to a judgment as a matter of law because they were arrested and charged without probable cause. Plaintiffs' post-trial motion will be denied because the issue of probable cause was properly submitted to the jury and, in any event, Waltman had probable cause to arrest and charge Plaintiffs.

---

    [1]     Johnson also pursued a Fifth Amendment retaliation claim.

# I. Background

## A. Procedural History.

Plaintiffs commenced this action on July 1, 2016. (*See* Doc. 1, *generally*). In the Complaint, Plaintiffs alleged that Waltman falsely arrested them without probable cause in violation of the Fourth Amendment and based on their exercise of their First and Fifth Amendment rights. (*See id.*). Plaintiffs also raised a Fourth Amendment malicious prosecution claim. (*See id.*).

Following the close of discovery, Plaintiffs moved for summary judgment on their Fourth Amendment false arrest and malicious prosecution claims. (*See* Doc. 13, *generally*). That motion was denied. (*See* Docs. 26-27).

The action proceeded to a three day jury trial commencing on June 26, 2018. At the close of Waltman's case, Plaintiffs moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a). That motion was denied.[2] A jury verdict was returned in favor of Waltman on all claims. (*See* Doc. 69, *generally*). In particular, the jury found that Waltman had probable cause to arrest or seize Gonzalez, Johnson, and Marshall. (*See id.* at ¶ 1).

Plaintiffs timely filed the instant motion for judgment as a matter of law and/or a new trial. (*See* Doc. 73, *generally*). Plaintiffs argue that they are entitled to judgment as a matter of law because: (1) it was an error to submit the question of probable cause to the jury; and (2) the facts, viewed most favorably to Waltman, failed to establish the existence of probable cause to seize, arrest, or charge them criminally. (*See* Doc. 74, *generally*). Waltman opposes the motion and disputes that Plaintiffs are entitled to judgment as a matter of law or a new trial. (*See* Doc. 77, *generally*). Plaintiffs have filed a reply in further support of their motion. (*See* Doc. 78, *generally*). Plaintiffs' post-trial motion is thus fully briefed and ripe for disposition.

---

[2] Defendant also moved pursuant to Rule 50(a) for judgment as a matter of law at the close of Plaintiffs' case and the close of his own case. Those motions were denied.

**B.   Factual Background.**

The facts as presented at trial follow:

In October 2015, Plaintiffs Gonzalez and Johnson worked for an organization called "CopBlock" and Marshall did some work for that organization as well. CopBlock is a de-centralized organization where volunteers post articles and break stories on its website detailing encounters with law enforcement.

On October 16, 2015, Plaintiffs went together in Johnson's automobile to the local Lehighton police station to take pictures, video, and get some B roll footage for a story. After that, Plaintiffs proceeded to the Pennsylvania State Police Barracks in Lehighton. Plaintiffs went there for the same purpose that they went to the local police station.

Upon arriving at the Lehighton Barracks, Plaintiffs observed a marked state police cruiser parked partially in a handicapped parking space and partially in the handicapped loading area. Plaintiffs photographed the vehicle.

Plaintiffs also observed a sign on the property stating "Emergency and Authorized Vehicles Only" (the "Sign"). Marshall interpreted the Sign to mean that it applied to vehicles only, and that he was allowed to walk beyond the Sign, but not drive past it. As such, Marshall went past the threshold of the Sign because he believed it did not apply to him. Marshall never went beyond the threshold of the front of the building. He was there for no more than a minute or a minute and a half. According to Johnson, Plaintiffs were past the Sign when they got out of his vehicle, but he denied walking on the blacktop beyond the sign. Gonzalez also testified that he never walked beyond the Sign.

Waltman testified that Plaintiffs were being observed by troopers from inside the Barracks. At some point, Waltman was advised that all three Plaintiffs went past the Sign. Waltman, along with other troopers, eventually exited the Barracks to make contact with Plaintiffs.

As Marshall circled back to return to the vehicle he heard the door to the

3

barracks jingle, so he turned on his cell phone camera and started recording. Gonzalez similarly began recording with his cell phone. Johnson began recording on a video camera.

Waltman approached Plaintiffs and asked if they went beyond the Sign. Marshall did not respond to that question. Johnson, however, responded by stating that he did not need to answer that question. On the videos taken during the encounter between Plaintiffs and the state troopers, Marshall is heard stating that he did not go beyond the Sign. Waltman also asked Plaintiffs if they were video taping the entire time at the Barracks, to which Gonzalez responded "on and off."

Waltman informed Plaintiffs that they were under arrest. Plaintiffs were all handcuffed and escorted inside the Barracks. Inside, Plaintiffs were searched, their pockets were emptied, and their property was seized and inventoried. Marshall and Johnson were restrained in handcuffs the entire time they were in the Barracks until they were released. At some point while in the Barracks, Gonzalez was taken to a different room across the hall and questioned about his identification that he produced. Gonzalez could not recall if the handcuffs were removed while he was fingerprinted.

While Plaintiffs were detained in the Barracks, Waltman contacted the on-call Assistant District Attorney. After speaking with the Assistant District Attorney, Plaintiffs were released. According to Waltman, Plaintiffs were detained for approximately an hour. When they were released, Plaintiffs' wallets and keys were returned, but Plaintiffs, despite their requests, did not receive back their cell phones or video/photography equipment.

According to Marshall, Waltman informed Plaintiffs that they needed prior permission to film the Barracks. Waltman, however, denied telling Plaintiffs that they needed permission to film Pennsylvania State Police property. Waltman also testified that it did not bother him that Plaintiffs were filming in public outside the Barracks.

As they were preparing to leave, Plaintiffs requested a receipt for their property, but that request was denied. Johnson continued to protest, at which time Plaintiffs

4

were informed that if they did not leave they would be arrested again.

The next day, October 17, 2015, Waltman prepared an incident report relating to the prior evening's events. In his synopsis of that incident, he wrote, *inter alia*, that "[t]he subjects then proceeded past posted signs advising readers of only authorized personnel and vehicular access and continued deeper onto PSP property to film additional sides of the exterior of the facility in a restricted are." Waltman also quoted the content of the sign *verbatim* in his report, and he indicated that Plaintiffs were observed going beyond the sign by Trooper Bower. Waltman's October 17, 2015 report further indicates that the on-call District Attorney advised that nothing greater than summary criminal actions were warranted at the time, and that it was appropriate to keep Plaintiffs' equipment pending further examination.

In an incident report prepared by Trooper Horlacher, he noted that he reviewed the footage from surveillance cameras outside the Barracks and Plaintiffs are not observed on the camera covering the majority of the restricted area of the building at issue. Horlacher also indicated that Plaintiffs were out of view of surveillance cameras for a total of 1 minute and 2 seconds while at the Barracks.

A few days later, Marshall attempted to retrieve his cell phone that was confiscated. He was unsuccessful, and he was told that it could take months or years until it was returned. Plaintiffs were eventually notified that their property was being released. Plaintiffs subsequently retrieved their confiscated equipment.

A few weeks after being arrested on October 16, 2015, Plaintiffs each received a citation in the mail charging them with defiant trespass in violation of 18 Pa. C.S.A. § 3503(b)(1)(ii). Plaintiffs all pled not guilty to the offense.

On March 1, 2016, a summary trial was held on the trespass charges filed against Plaintiffs resulting from the events outside the Barracks on October 16, 2015. At the summary trial, Waltman asked questions of witnesses, presented evidence, and made arguments on behalf of the Commonwealth. There was no assistant district attorney at Plaintiffs' summary trial. The presiding magisterial district judge granted

Plaintiffs' motion for judgment of acquittal at the conclusion of the Commonwealth's case-in-chief without hearing any evidence or testimony from Plaintiffs. In a report prepared by Waltman, he explained that the magisterial district judge granted Plaintiffs' motion to dismiss the charges, citing "that the Commonwealth failed to meet the criteria for the charge of 'Defiant Trespass', in that the signs posted at the time at PSP Lehighton were un-clear to the reader." The same day the charges were dismissed, Waltman contacted the Carbon County District Attorney requesting that the charges against Plaintiffs be re-filed. The District Attorney denied that request.

## II. Legal Standards

**A.  Federal Rule of Civil Procedure 50(b): Renewed Motion for Judgment as a Matter of Law.**

Federal Rule of Civil Procedure 50(a) authorizes the entry of judgment as a matter of law. A motion for relief under this Rule may be made at anytime before the case is submitted to the jury. Fed. R. Civ. P. 50(a)(2). Where, as here, a court denies a parties' Rule 50(a) motion, "the court is considered to have submitted the action to the jury subject to the courts later deciding the legal questions raised by the motion." Fed. R. Civ. P. 50(b). In the event an adverse judgment is entered, the movant may renew the motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b). Rule 50(b) provides:

> If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motions. No later than 28 days after the entry of judgment . . . the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59.

*Id.*

"In order to prevail, the moving party must show that the jury's findings, presumed or expressed, are not supported by substantive evidence, or if they [are], that the legal conclusions implied [by] the jury's verdict cannot in law be supported by the

6

findings." *Moore v. Susquehanna Area Regional Airport Authority*, No. 2-0535, 2005 WL 2430790, at *2 (M.D. Pa. Sept. 30, 2005) (citing *Valenti v. Allstate Ins. Co.*, 243 F. Supp. 2d 221, 223 (M.D. Pa. 2003)).

> In considering whether the evidence at trial was sufficient to sustain the jury's verdict, the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version. Although judgment as a matter of law should not be granted liberally, a mere scintilla of evidence is insufficient to sustain a verdict of liability. The Court is not to ask whether there is literally no evidence supporting the verdict, but instead whether there is evidence upon which the jury could properly find a verdict for the prevailing party. Accordingly, if the evidence of record is insufficient to support the jury's verdict, then motion for judgment as a matter of law should be granted.

*Id.* at *3 (citations omitted).

A motion for judgment as a matter of law should be granted if, "viewing the evidence in the light most favorable to the non-movant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Ambrose v. Township of Robinson*, 303 F.3d 488, 492 (3d Cir. 2002) (quoting *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993)); *see also Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc.*, 530 F.3d 204, 209 (3d Cir. 2008).

**B.    Federal Rule of Civil Procedure 59: Motion for a New Trial**.

Under Rule 59, motions for a new trial must be filed within twenty-eight (28) days of the date the judgment was entered. *See* Fed. R. Civ. P. 59(b). After a jury trial, a new trial may be granted "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Courts have granted motions for a new trial where: (1) there is a significant error of law, to the prejudice of the moving party; (2) the verdict is against the weight of the evidence; (3) the size of the verdict is against the weight of the evidence; or (4) counsel engaged

7

in improper conduct that had a prejudicial effect on the jury. *See Maylie v. Nat'l R.R. Passenger Corp.*, 791 F. Supp. 477, 480 (E.D. Pa. 1992), *aff'd* 983 F.2d 1051 (3d Cir. 1992). The decision to grant a new trial is left to the sound discretion of the trial judge. *See Blackiston v. Johnson*, No. 91-5111, 1995 WL 563834, at *1 (E.D. Pa. 1995), *aff'd* 91 F.3d 122 (3d Cir. 1996), *cert. denied* 519 U.S. 953 (1996). Where the evidence is in conflict and subject to two or more interpretations, the trial judge should be reluctant to grant a new trial. *See Klein v. Hollings*, 992 F.2d 1285, 1295 (3d Cir. 1993).

### III. Discussion

In the instant motion, Plaintiffs request that judgment be entered as a matter of law in their favor with respect to their Fourth Amendment false arrest claim and that a damages only trial be held with respect to this cause of action. (*See* Doc. 74, 6).[3] As to Plaintiffs' First Amendment retaliation and Fourth Amendment malicious prosecution claims, Plaintiffs seek a new trial. (*See id.*).[4]

---

[3] A false arrest claim under the Fourth Amendment requires a plaintiff to establish: "(1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012) (citing *Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995); *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988)).

[4] "To establish unlawful retaliation under the First Amendment, a plaintiff must prove: '(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action.'" *Karns v. Shanahan*, 879 F.3d 504, 522 (3d Cir. 2018) (quoting *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006)). For a Fourth Amendment malicious prosecution claim under § 1983, a plaintiff must show: "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007) (citing *Estate of Smith v. Marasco*, 318 F.3d 497,

According to Plaintiffs, I erred in submitting the question of probable cause to the jury. (*See id*. at 7-10). Plaintiffs explain that while probable cause is properly submitted to a jury when there are disputed factual issues, "[t]here were no facts in dispute" in this case because "[i]t is undisputed that the plaintiffs walked, not in any vehicle, past a sign which read 'Emergency and Authorized Vehicles Only.' It is undisputed that the Sign was next to a blacktop road." (*Id*. at 7, 10). Plaintiffs further insist that as there were "no other material facts," I "should have decided as a matter of law whether there was or was not probable cause to charge plaintiffs with criminal trespass/defiant trespass. The jury should not have been permitted to decide a purely legal issue." (*Id*. at 10). It follows, says Plaintiffs, that on the undisputed facts, "there was no probable cause to seize or arrest plaintiffs, or to charge them with crimes." (*Id*. at 11). This is so because "[t]he Sign did not give 'notice against trespass.' Neither its actual words, nor any meaning that could be inferred by its words, indicated that persons could not step foot beyond the Sign." (*Id*.). Thus, Plaintiffs conclude that they are entitled to judgment as a matter of law on the issue of probable cause. (*See id*.).

Plaintiffs are not entitled to relief for three reasons. First, Plaintiffs take too narrow a view of the facts material to their claims. "[G]enerally, 'the question of probable cause in a section 1983 damage suit is one for the jury[.]'" *Estate of Smith v. Marasco*, 318 F.3d 497, 514 (3d Cir. 2003) (quoting *Montgomery v. De Simone*, 159 F.3d 120, 124 (3d Cir. 1998)); *see also Dempsey v. Bucknell Univ.*, 834 F.3d 457, 468 (3d Cir. 2016) (probable cause "determination is necessarily fact-intensive, and it will usually be appropriate for a jury to determine whether probable cause existed"). Nonetheless, a court may resolve the issue of probable cause where the evidence viewed properly "would not support a contrary factual finding." *Dempsey*, 834 F.3d at 468 (affirming summary judgment in favor of the defendants where no reasonable

---

521 (3d Cir. 2003)).

jury could find a lack of probable cause).

Here, a number of material facts pertinent to the resolution of Plaintiffs' claims were in dispute. For one, and contrary to a statement in Plaintiffs' post-trial submission, (*see* Doc. 74, 10), a factual dispute existed at trial regarding whether Plaintiffs walked beyond the Sign. Whereas Marshall acknowledged walking past the Sign, Johnson and Gonzalez did not do the same. Instead, both of these Plaintiffs denied traversing past the Sign on foot. However, testimony from the state trooper witnesses indicated that all three Plaintiffs walked beyond the Sign. Thus, it was proper for the jury to consider this conflicting evidence to determine whether Plaintiffs, in fact, traveled beyond the Sign. Other facts were also in dispute. For instance, Marshall testified that Waltman informed Plaintiffs that they needed prior authorization before filming at the Barracks. Waltman, however, denied saying as much to Plaintiffs. Likewise, there was competing evidence presented at trial as to whether Waltman falsely informed the on-call District Attorney as to the contents of the Sign at issue. These disputes were properly left to the jury for resolution. Accordingly, viewing the evidence in the light most favorable to Waltman and giving that evidence the advantage of all fair and reasonable inferences, it was reasonable for a jury to conclude that Waltman had probable cause to arrest Plaintiffs. *See*, *e.g.*, *Muraveva v. Toffoli*, 709 F. App'x 131, 135 (3d Cir. 2017).

Second, insofar as I erred in submitting the question of probable cause to the jury, that error was harmless because Waltman had probable cause to arrest and charge Plaintiffs. *See*, *e.g.*, *Campbell v. Yellow Cab Co.*, 137 F.2d 918, 922 (3d Cir. 1943) (submission of question of probable cause to the jury is harmless if the jury's finding was "the finding which the trial judge should have made from the evidence"); *Sabatini v. Its Amore Corp.*, 455 F. App'x 251, 259 (3d Cir. 2011) ("For purposes of harmless error analysis we ask whether it is highly probable that the error did not affect the result."). Thus, any error did not affect the outcome of the case, so Plaintiffs are not entitled to relief. *See Sabatini*, 455 F. App'x at 259.

> The Fourth Amendment prohibits police from making an arrest except "upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. Far from demanding proof of guilt beyond a reasonable doubt, "[p]robable cause exists if there is a 'fair probability' that the person committed the crime at issue." *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000) (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997)). Put another way, "probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995). The probable cause standard thus provides individuals protection "against unreasonable searches and seizures," U.S. Const. amend. IV, while simultaneously enabling investigating officers to act quickly - before necessarily obtaining evidence sufficient to prove guilt beyond a reasonable doubt - to effect an arrest. "[T]he standard does not require that officers correctly resolve conflicting evidence or that their determinations of credibility, were, in retrospect, accurate." *Wright v. City of Phila.*, 409 F.3d 595, 603 (3d Cir. 2005).
>
> As the Supreme Court has observed, "[i]n dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Illinois v. Gates*, 462 U.S. 213, 231, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983) (quoting *Brinegar v. United States*, 338 U.S. 160, 175, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949) (alteration in original)). For this reason, the Court has eschewed "any rigid demand that specific 'tests' be satisfied" and has instead prescribed a "totality-of-the-circumstances approach" to the probable cause determination. *Id.* at 230-31, 103 S. Ct. 2317. . . .

*Dempsey*, 834 F.3d at 467-68.

"Probable cause exists where the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *United States v. Cruz*, 910 F.2d 1072, 1076 (3d Cir.1990). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152, 125 S. Ct. 588, 593, 160 L. Ed. 2d 537 (2004). In coming to this conclusion, the arresting officer's state of mind is irrelevant. *Whren v. United States*, 517 U.S. 806,

812–13, 116 S. Ct. 1769, 1774, 135 L. Ed. 2d 89 (1996) ("[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis"); *Johnson v. Campbell*, 332 F.3d 199, 215 (3d Cir. 2003) ("Probable cause is objective, not subjective; essential to probable cause is that an officer would be justified in believing that an actual offense was being committed."); *see also Estate of Smith*, 318 F.3d at 514 ("Improper motive, however, is irrelevant to the question whether the objective facts available to the officers at the time reasonably could have led the officers to conclude that Smith was committing an offense.").

In the matter *sub judice*, a reasonable officer would have had cause to believe that a crime was being committed. *See Johnson*, 332 F.3d at 214. Significantly, "[t]he validity of the arrest is not dependent on whether the suspect actually committed any crime, and the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant." *Id*. at 211 (citation and quotation omitted).

The crime of defiant trespass is forth in the Pennsylvania Crimes Code. *See* 18 Pa. C.S.A. § 3503(b). That subsection provides, in part:

> **(b) Defiant trespasser. --**
>
> (1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by:
>
> . . .
>
> (ii) posting in a manner prescribed by law or reasonably likely to come to the attention of intruders.

Id. at § 3503(b)(1)(ii). A violation of § 3503 (b)(1) thus requires "that the defendant: 1) entered or remained upon property without a right to do so; 2) while knowing that he had no license or privilege to be on the property; and 3) after receiving direct or indirect notice against trespass." *Commonwealth v. Namack*, 663 A.2d 191, 194 (Pa. Super. Ct. 1995); *accord Karns*, 879 F.3d at 523 (a court "looks to the elements of the offense to determine whether an arrest was supported by probable cause.").

Plaintiffs' principal contention is that the Sign did not give "notice against

12

trespass" with respect to the conduct at issue. (*See* Doc. 74, 11). While Plaintiffs do not appear to dispute that the Sign provided notice against vehicular trespass, Plaintiffs argue that the Sign's "actual words, nor any meaning that could be inferred by its words, indicated that persons could not step foot beyond the Sign." (*Id*.). What Plaintiffs suggest is that if they went beyond the sign in a vehicle, an officer would have probable cause to charge them. But, since they were on foot, Plaintiffs reason that there was no probable cause to believe that they committed defiant trespass. I am not convinced.

"[T]he law recognizes that probable cause determinations have to be made 'on the spot' under pressure and do 'not require the fine resolution of conflicting evidence that a reasonable doubt or even a preponderance standard demands.'" *Paff v. Kaltenbach*, 204 F.3d 425, 436 (3d Cir. 2000) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 121, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975)); *see also Mazuka v. Rice Twp. Police Dep't*, 655 F. App'x 892, 896 (3d Cir. 2016) (Fisher, J., concurring) ("No officer at the scene of an alleged offense has a chance to place all of the evidence onto a bulletin board, pursue various factual and legal theories, or interview all possible witnesses. Instead, the officer typically must make his decision to arrest a suspect at the scene of the crime - a site where he is concerned for his own safety as well as the safety of those around him."); *Gilles v. Davis*, 427 F.3d 197, 207 (3d Cir. 2005) (police officers must "make 'split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving. . . . The reasonableness of the officer's belief should be judged from that on-scene perspective, not with the perfect vision of hindsight."); *accord Dempsey*, 834 F.3d at 469 ("in reviewing probable cause determinations made by law enforcement, the role of the courts is not that of the much-maligned 'Monday morning quarterback' whose critiques are made possible only by the benefits of hindsight.").

On the facts here, a reasonable person could believe that Plaintiffs were trespassing in violation of Pennsylvania law. While Waltman was unable to obtain a conviction against Plaintiffs for violation of § 3503(b)(1)(ii), this does not demonstrate

that he lacked probable cause to arrest and charge them with such a violation. Indeed, that the criminal charge was ultimately resolved in favor of Plaintiffs is of no moment to the probable cause determination. *See Radich v. Goode*, 886 F.2d 1391, 1397 (3d Cir. 1988) ("the standard for probable cause turns not on the actual guilt or innocence of the arrestee, but rather, whether the arresting officer *reasonably* believed that the arrestee had committed the crime.").

Moreover, I do not believe that a prudent police officer would have known at the time of the events at issue that the limitations imposed by the Sign did not apply to pedestrians. In that regard, Plaintiffs read the Sign as a restriction on vehicles only. But, a reasonable officer, without the benefit of hindsight and judged from an "on-scene perspective", would be justified in viewing that sign as *permitting only* emergency or authorized vehicles in the restricted area. In other words, as Plaintiffs all went beyond the sign according to Waltman (a point which Plaintiffs do not contest in the instant motion), (*see* Doc. 47, 10 ("It is undisputed Plaintiffs walked past the Sign . . .")), and Plaintiffs were not in an emergency or authorized vehicle, the facts and circumstances were sufficient to warrant an officer of reasonable caution to believe that a violation of § 3503(b)(1)(ii) had occurred. Given this, probable cause existed to arrest and charge Plaintiffs. This remains true as well even though the criminal charges against Plaintiffs ultimately culminated with the entry of a judgment of acquittal at a summary trial before a magisterial district judge. Thus, any error that resulted from submitting the question of probable cause to the jury was harmless.

Third and relatedly, it is for this reason that a finding of qualified immunity in favor of Waltman is warranted even if Plaintiffs are correct as to the first two points discussed above. That is, assuming Plaintiffs are correct that it was both erroneous to submit the question of probable cause to the jury and that Waltman lacked probable cause to arrest and charge them, Waltman is entitled to qualified immunity at least as to Marshall's claims premised on an absence of probable cause. Although Waltman did not raise qualified immunity in response to the instant motion, he moved at trial

14

for judgment as a matter of law pursuant to Rule 50 on qualified immunity grounds as to Marshall's claims,[5] so he preserved it post-trial. *Cf. Lam v. City of San Jose*, 869 F.3d 1077, 1088-89 (9th Cir. 2017); *see also Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1172 (3d Cir. 1993) ("In order preserve an issue for judgment pursuant to Rule 50(b), the moving party must timely move for judgment as a matter of law . . . pursuant to Rule 50(a), and specify the grounds for that motion."); *Holt v. Pennsylvania*, No. 10-5510, 2014 WL 2880376, at *20 (E.D. Pa. June 25, 2014).

> [O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was "clearly established at the time." *Reichle v. Howards*, 566 U.S. 658, 664, 132 S. Ct. 2088, 182 L. Ed. 2d 985 (2012). "Clearly established" means that, at the time of the officer's conduct, the law was " 'sufficiently clear' that every 'reasonable official would understand that what he is doing'" is unlawful. *al–Kidd, supra*, at 741, 131 S. Ct. 2074 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)). In other words, existing law must have placed the constitutionality of the officer's conduct "beyond debate." *al–Kidd, supra*, at 741, 131 S. Ct. 2074. This demanding standard protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L .Ed. 2d 271 (1986).
>
> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991) (per curiam), which means it is dictated by "controlling authority" or "a robust 'consensus of casesof persuasive authority,'" *al–Kidd, supra*, at 741-742, 131 S. Ct. 2074 (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S. Ct. 1692, 143 L. Ed. 2d 818 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S., at 666, 132 S. Ct. 2088. Otherwise, the rule is not one that "every reasonable official" would know. *Id.*, at 664, 132 S. Ct. 2088 (internal quotation marks omitted).
>
> The "clearly established" standard also requires that

---

[5] Marshall, as stated in the text, was the only one of Plaintiffs to acknowledge at trial that he walked beyond the Sign.

> the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. - - -, - - -, 136 S. Ct. 305, 309, 193 L. Ed. 2d 255 (2015) (per curiam ). We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff, supra*, at 2023 (internal quotation marks and citation omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Anderson, supra*, at 641, 107 S. Ct. 3034. In the context of a warrantless arrest, the rule must obviously resolve "whether 'the circumstances with which [the particular officer] was confronted . . . constitute[d] probable cause.'" *Mullenix, supra*, at 309 (quoting *Anderson, supra*, at 640-641, 107 S. Ct. 3034; some alterations in original).
>
> We have stressed that the "specificity" of the rule is "especially important in the Fourth Amendment context." *Mullenix, supra*, at 308. Probable cause "turn[s] on the assessment of probabilities in particular factual contexts" and cannot be "reduced to a neat set of legal rules." *Gates*, 462 U.S., at 232, 103 S. Ct. 2317. It is "incapable of precise definition or quantification into percentages." *Pringle*, 540 U.S., at 371, 124 S. Ct. 795. Given its imprecise nature, officers will often find it difficult to know how the general standard of probable cause applies in "the precise situation encountered." *Ziglar v. Abbasi*, 582 U.S. ---, ---, 137 S.Ct. 1843, 1866, 198 L.Ed.2d 290 (2017). Thus, we have stressed the need to "identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment." *White v. Pauly*, 580 U.S. - - -, - - -, 137 S. Ct. 548, 552, 196 L. Ed. 2d 463 (2017) (per curiam ); *e.g.*, *Plumhoff, supra*, at 2023. While there does not have to be "a case directly on point," existing precedent must place the lawfulness of the particular arrest "beyond debate." *al–Kidd, supra*, at 741, 131 S. Ct. 2074. Of course, there can be the rare "obvious case," where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances. *Brosseau v. Haugen*, 543 U.S. 194, 199, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004) (per curiam ). But "a body of relevant case law" is usually necessary to " 'clearly establish' the answer" with respect to probable cause. *Ibid*.

*District of Columbia v. Wesby*, - - - U.S. - - -, 138 S. Ct. 577, 589-90, 199 L. Ed. 2d 453 (2018); *see also Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165, 172-73 (3d

Cir. 2017) (in addressing the clearly established prong of the qualified immunity analysis, "the right allegedly violated [must be defined] at the appropriate level of specificity," and framed "in a more particularized, and hence more relevant, sense, in light of the case's specific context, not as a broad general proposition.")

The circumstances in which Waltman was presented included a group of three individuals, on foot, having gone beyond a sign at stating "Emergency and Authorized Vehicles Only." Even assuming Waltman lacked probable cause to arrest Plaintiffs because they ventured beyond the Sign on foot and not in a vehicle, he is entitled to qualified immunity because he "reasonably but mistakenly concluded that probable cause was present." *Wesby*, 138 S. Ct. at 591. Plaintiffs have not cited to any authority, nor a line of cases, finding a Fourth Amendment violation under similar circumstances. *See id*. Nor is this such a case where a relevant body of case law is not needed. *See id*. For these reasons, Waltman is otherwise entitled to qualified immunity to the extent any prejudicial errors occurred at trial.

### IV. Conclusion

For the above stated reasons, Plaintiffs' motion for judgment as a matter of law and/or new trial will be denied.

An appropriate order follows.

March 13, 2019 /s/ A. Richard Caputo
Date                                                 A. Richard Caputo
                                                               United States District Judge